STATE of Missouri, Respondent,

v.

Jack T. JOHNSON, Appellant.

No. WD 35892.

Missouri Court of Appeals,
Western District.

March 12, 1985.

James J. Wheeler, Keytesville, for appellant.

Michael L. Midyett, Pros. Atty., Chariton County, Keytesville, for respondent.

Before LOWENSTEIN, P.J., and NUGENT and BERREY, JJ.

BERREY, Judge.

Defendant was convicted by a jury in the Circuit Court of Carroll County of, Count I, driving while intoxicated, second offense, Count II, driving while license was revoked and Count III, failure to transfer license plates.

The jury assessed punishment of six months in the county jail and a fine on Count I, ninety days in the county jail on Count II and a fine on Count III. In addition to the jail time the judge imposed a fine of $250.00 on Count I and $250.00 on Count III. The defendant appeals the conviction and alleges six points of error: (I) the court erred in not sustaining defendant's objection to leading questions by the prosecuting attorney; (II) the trial court erred in permitting an officer to testify as to breathalyzer reading since no foundation was laid and there was no showing of the meaning of the reading; (III) Instruction Number Seven was not supported by competent evidence showing appellant's Missouri operator's license was revoked; (IV) the trial court erred in not giving tendered Instruction A; (V) the trial court erred in giving Instruction Number Eight; and (VI) the trial court's comment to the jury regarding defendant's evidence was in error and in violation of Rule 27.06.

Deputy Sheriff Link was seated in his patrol car operating radar about 1:30 a.m. on Saturday night, August 21, 1983, on the main drag in Brunswick, Missouri. He was parked a block or so from the Rendezvous bar. As he sat in his cruiser he observed the defendant exit the bar and walk west and then turn south between some buildings. Officer Link next saw defendant drive west on Highway 24 in a white Plymouth and noted the license plate number, BRT 491. He then called the Carroll County sheriff's office for a license check on the vehicle.[1] While waiting for a response he followed defendant in his vehicle and after about two blocks the defendant pulled over and Officer Link pulled in behind him. The dispatch came back that the plates in question were registered to a different car.

At this juncture Officer Link approached the defendant's car and asked him for his license, to which defendant responded "I don't have any driver's license." Officer Link observed the usual signs evidencing intoxication to-wit: odor of alcohol on de-

fendant's breath, slurred speech, watery eyes, flushed face and when ordered to stand defendant was unsteady. Defendant stated he was thirty when, in fact, he was fifty-three and that he weighed one-hundred pounds when, in fact, he weighed one-hundred-eighty pounds. Officer Link then transported defendant to Keytesville to take a breathalyzer test, which measured 0.24 "breath alcohol content by weight."

Appellant argues first that the trial judge erred in permitting the prosecuting attorney to ask leading questions.

The questions objected to by the appellant were from the offense report form and constituted the interrogation between Officer Link and the defendant. The appellant had been supplied a copy of the report pursuant to his discovery request. Although the questions were numerous, in this case, the defendant was not prejudiced as he already knew the answers to be given since it was from his interrogation.

■ The matter of leading questions is largely discretionary with the trial court and unless there is abuse of discretion will not constitute reversible error. *State v. Wolfe*, 570 S.W.2d 694, 696 (Mo.App.1978).

The appellant contends that *State v. Shepard*, 334 Mo. 423, 67 S.W.2d 91 (1933), holds it error for the prosecuting attorney to lead the witness and so it does. Later cases have consistently held that the trial court has discretion to overrule objections and grant leading questions. It also holds that the prosecuting attorney may lead a witness to refresh his memory and that was the evidence in the instant case. Officer Link was asked:

Q. Do you need those notes to refresh your memory as to what you asked him and what the responses were, that he made?

A. Yes, sir, I'd like to.

Q. Why don't you refer to those notes. Did you ask him the question, when did he leave?

A. Yes, sir.

1. Though Officer Link is a deputy sheriff in Chariton County, Chariton County does not have the facilities to give him this information after midnight.

The following then transpired between counsel and the court:

Mr. Wheeler: May I ask a voir dire question?

The Court: You may.

Mr. Wheeler: Do you have an independent memory of this, or are you reading from something that has been furnished you?

The Witness: That is a copy of Alcohol Influence Report.

Mr. Wheeler: Something that the prosecutor gave to you today?

The Witness: No. I made this report out myself.

Mr. Wheeler: Did he give it to you today?

The Witness: No, sir.

Mr. Wheeler: Do you have an independent memory of what you are saying?

The Witness: With help from this, I can remember exactly what was said. By myself, I have trouble remembering exactly what Mr. Johnson said.

Mr. Wheeler: I have nothing further.

■ It is clear from the evidence that the witness was refreshing his memory and the leading nature of the questions fell under the trial court's discretion. In *Sheets v. Kurth*, 426 S.W.2d 103, 104 (Mo. 1968), the court acknowledged that the general rule regarding leading a witness was discretionary with the trial court. Leading a witness will not constitute reversible error unless the trial court abuses its discretion.

■ The transcript reveals the testimony of Link was fairly conducted and the court did not err in overruling the appellant's objection to the leading questions. *State v. Todd*, 372 S.W.2d 133, 137 (Mo. 1963). Appellant does not allege prejudice, and, "[e]rror without prejudice, if there was error here, affords no basis for relief by an appellate court." *State v. Phelps*, 478 S.W.2d 304, 310 (Mo.1972).

Point I is denied.

■ Appellant next alleges that the trial court erred in permitting testimony concerning the breathalyzer reading because no foundation was laid and there was no showing of the meaning of the reading. The record, though, shows quite the contrary. Deputy Sheriff John Gamblin, the Chariton County breathalyzer operator, testified he administered the breathalyzer to defendant. In the process of doing so he smelled intoxicants on defendant's breath, observed defendant had blood shot eyes, slurred speech and staggering gait. Gamblin further testified he had observed hundreds of persons who had the same characteristics as defendant and that in his opinion defendant was drunk. Gamblin testified defendant registered 0.24 plus on the breathalyzer and he reported it as the lower reading 0.24, breath alcohol content by weight. He identified state Exhibit 2 as the checklist supplied by the Division of Health that he completed at the time the test was administered to the defendant. Pursuant to his testimony, the exhibit was received as reflective of the actual procedure he followed.

Brian Smith, a corporal of the Missouri State Highway Patrol, testified his duties for the past four years involved maintenance of breathalyzers in Chariton County. Smith holds a Type II R and Type III permit issued by the Missouri Division of Health. The former authorizes him to repair the "Stevenson Model 900" machine, the machine used in this case. The trooper had checked the machine monthly. On August 19, 1983, and September 15, 1983, he found it to be within its tolerances.

The evidence offered by the state demonstrated that Deputy Gamblin followed the procedures set forth in the checklist approved by the Division of Health. *State v. Bush*, 595 S.W.2d 386, 388 (Mo.App.1980). The officer testified he was licensed to operate a breathalyzer by the Missouri Division of Health and his permit was offered into evidence. The state sought and received without objection judicial notice of the Missouri Code of State Regulations specifically 13 C.S.R. 50–140 which pertains to the Missouri Division of Health and its

rules for analyzation of breath by the breathalyzer 900 devices. *State v. Sinclair*, 474 S.W.2d 865, 868 (Mo.App.1971). The test results for admission as evidence were properly qualified and received as evidence of Johnson's state of intoxication.

Appellant's Point II is denied.

For his third point, appellant argues that Instruction Number Seven was not supported by competent evidence showing appellant's Missouri operator's license was revoked. As evidence of the revocation, the state introduced a copy of the appellant's driving record, certified by the Custodian of Records of the Driver's License Bureau of the Missouri Department of Revenue. The exhibit shows in part:

Chariton County 11/23/82 Convicted 12 points

Driver's Lic. 12/08/82 Revoked 1 year

The state also introduced a certified copy of the appellant's conviction on November 23, 1982, for driving while his license was revoked. Appellant admitted the conviction. At the time of his arrest for the present offense, Officer Link asked the appellant for his license and the appellant responded, "No, I haven't got any."

According to § 302.302.1(5), RSMo 1978, twelve points are assessed to a person convicted of driving while under revocation. Under § 302.304.6, RSMo 1978, where an individual has accumulated 12 points in twelve months, the director shall revoke the driver's license for one year. This is the law. Regardless of defendant's claim that he was not notified of the December 8, 1982, revocation, all persons are presumed to know the law. *Hartley Realty Company v. Casady*, 332 S.W.2d 291, 295 (Mo. App.1960).

■ Appellant argues that the copy of his driving record was insufficient evidence to allow submission of the issue to the jury and that the state should have produced the order of revocation. However, in *State v. Williamson*, 668 S.W.2d 597, 599 (Mo. App.1984), the trial court properly admitted

into evidence a certified copy of the defendant's driving record for the purpose of showing he did not have a valid license. The certification was sufficient foundation.

Point III is denied.

Appellant next argues under Point IV, that the trial court erred in giving Instruction Number Seven because the instruction did not instruct the jury as to the culpable mental state of the appellant. The instruction includes all elements for the offense of driving while license revoked as set forth under § 302.321 RSMo 1978, and reads:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 21, 1983, in the County of Chariton, State of Missouri, the defendant operated a motor vehicle and

Second, that at said time the defendant's license and privilege to drive a motor vehicle on the highways of the State of Missouri was revoked,

then you will find the defendant guilty under Count II of driving while license revoked.

The trial judge refused to submit appellant's tendered Instruction A:

The Court instructs the jury that you must find the defendant not guilty of Count II of the information if you do not find and believe, beyond a reasonable doubt, that defendant had knowledge his license and privilege to drive a motor vehicle on the highways of the State of Missouri was revoked at the time described in evidence.

Appellant cites § 562.021.2, RSMo 1978, for his proposition that even where the elements of an offense do not expressly proscribe a culpable mental state, a culpable mental state is nonetheless required. However, § 562.021.4 provides, *"Knowledge that conduct constitutes an offense,* or knowledge of the existence, meaning or application of the statute defining an offense *is not an element of an offense*

unless the statute clearly so provides." (Emphasis added.)

 Appellant was driving a motor vehicle during a period when his license was revoked. He knew he was driving and on November 23, 1982, he had been convicted of an offense punishable by the assessment of points sufficient for revocation.

Point IV is denied.

Appellant's argument under Point V is substantially similar to Point IV.

Incorporating by reference his argument under Point IV, he argues the court erred by failing to instruct the jury as to his culpable mental state in driving a vehicle with license plates not registered to the said vehicle. The instruction pertaining to Count III which was submitted to the jury specifically sets forth the elements of the offense contained in § 301.320. The statute does not include the element that defendant knows he is committing an offense.

 The vehicle was registered to appellant and his son. Appellant attempted to interject the issue that perhaps his son had failed to transfer the plates. He offered to prove he had no knowledge of any irregularity concerning the plates and the trial court refused the offer. Section 301.320 is specific: "No person shall operate a motor vehicle ... on which there is displayed on the front or rear thereof any other plate, ... bearing any number except the plate furnished by the director of revenue...." This was precisely the conduct of which appellant was charged and convicted.

Point V is denied.

For Point VI relied on appellant contends Judge Sloan erred in making the following comments to the jury.

The Court: That's correct. The point I'm making is that the jury will remember the evidence that they previously heard concerning the license on that night in question.

(By Mr. Wheeler) Did you have this license on August 20th of 1983?

Mr. Midyett: Objection, Your Honor, for the same reasons I have previously enunciated.

The Court: I am going to overrule the objection at this time, whether or not he had it. He didn't have it on his person. The jury will remember that.

(Proceedings held at the bench.)

Mr. Wheeler: We object to the Court commenting on the evidence. We object to the Court telling the jury and making the statement in the presence of the jury, that the Court will remember that the Defendant stated he didn't have it on him. That is a direct comment on the evidence and improper, and we ask for a mistrial.

The Court: Overruled.

 The judge commented correctly on his recollection of the challenged testimony when he ruled upon the admissibility of the evidence and his reasoning on which the ruling was based. He directed his remarks to counsel, not to the jury, and the jury would have so understood. *State v. Phelps, supra.* Certainly nothing can be read into the trial court's comments that would indicate a bias, prejudice or hostility towards the appellant such as to prejudice the minds of the jury and deprive him a fair trial. *State v. Underwood,* 642 S.W.2d 658, 660 (Mo.App.1982); *State v. Jones,* 558 S.W.2d 242, 246 (Mo.App.1977).

Appellant's Point VI is denied.

Judgment affirmed.

All concur